## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHLEEN REILLY, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 19-6089 |
| ANDREW SAUL, | : | |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

**Timothy R. Rice**                                                                    **October 28, 2020**
**U.S. Magistrate Judge**

Plaintiff Kathleen Reilly filed a claim for Disability Insurance Benefits (DIB), alleging

disability beginning January 26, 2014.  R. at 120-21.  Reilly's condition has varied since her

alleged onset date, but she has maintained that she is unable to work due to fatigue, body pain,

difficulty using her hands, headaches, trouble sitting, standing, and walking, gastric issues,

inability to sustain concentration, and memory loss.  See id. at 120-21, 130-31, 822-26.  Reilly

raises several arguments asserting that the Administrative Law Judge (ALJ) erred in denying her

claim for DIB.  Pl. Br. (doc.11) at 1-31; Pl. Reply (doc. 15) at 1-15.  Each of Reilly's arguments

is essentially an attack on the ALJ's residual functional capacity (RFC)[1] assessment and ultimate

conclusion that she is capable of a performing a range of sedentary work on a sustained basis.

The ALJ's decision is not supported by substantial evidence.[2]

---

[1]      A claimant's RFC reflects "the most [she] can still do [in a work setting] despite [her] limitations."  20 C.F.R. § 404.1545(a).

[2]      Reilly consented to the jurisdiction of a United States Magistrate Judge on December 31, 2019 (doc. 4), pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 72, Local Rule 72.1, and Standing Order, In re Direct Assignment of Social Security Appeal Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018).  See also Roell v. Withrow, 538 U.S. 580, 584 (2003) (consent to Magistrate Judge jurisdiction can be inferred from failure to object after notice and opportunity).

In her DIB application, Reilly alleged disability resulting from fibromyalgia, arthritis, carpal tunnel in the right hand, depression, two herniated discs, acid reflux, and irritable bowel syndrome[3] (IBS).  R. at 120-21.  She sought benefits in April 2014, three months after she stopped working due to unmanageable pain and fatigue.  Id. at 38-41, 131, 819-20.  Because her date last insured (DLI)[4] was September 30, 2018, she had to prove that she was fully disabled for at least a one-year period between January 26, 2014 and September 30, 2018 to obtain benefits. Id. at 775-76.

Reilly has a well-documented case of fibromyalgia diagnosed in 2013.  See id. at 392, 437-38.  In addition to other symptoms, she reported functional limitations in her hands since at least 2011, when she first consulted with a neurologist.  See id. at 439.  In January 2014, testing showed borderline carpal tunnel of the right wrist.  Id. at 419-21.  Despite wearing recommended hand braces, she continued to experience difficulty with her hands.  See, e.g., id. at 610, 1567, 1579, 1600.  Although later testing no longer revealed carpal tunnel syndrome, October 2018 x-rays revealed another cause of hand impairment, osteoarthritis.  Id. at 1064-66, 1620-31.  Reilly also has a long history of knee pain, and received treatment since at least 2008. Id. at 507, 691.  She had unsuccessful knee surgery in 2008.  Id. at 207-16, 507, 691.  She was eventually diagnosed with a cancerous lesion in her right knee and properly treated in 2016.  See id. at 715-34, 742-71, 1241-78, 1284-1341, 1631-1732, 1809-15, 1933-2114.

---

[3]    IBS is a chronic set of symptoms "usually due to a combination of psychologic and physiologic factors" that includes abdominal pain and altered bowel habits without pathologic change.  Dorland's Illustrated Medical Dictionary (32nd ed. 2012) (Dorland's) at 1835.

[4]    The DLI is the last date on which, if a claimant has become fully disabled by the applicable regulatory standards, he or she qualifies for DIB benefits.  20 C.F.R. § 404.131; Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990).

Between August 2014 and February 2016, Reilly endured multiple ineffective attempts to relieve the symptoms of her then-undiagnosed knee cancer.  She consulted with three orthopedic specialists who treated her with medication and steroid injections.  Id. at 490-508, 531-48, 641, 691.  She was diagnosed with arthritis and referred to physical therapy.  Id. at 494-97.  Although a right knee lesion was noted on an MRI report dated October 14, 2014, see id. at 481-82, 492, 496, Reilly was not advised of this finding until late 2015, after the third orthopedic specialist she consulted ordered additional MRI studies which revealed a lesion that "has clearly enlarged over the last several years."  See id. at 53-54, 694, 701-02, 716.  After her February 2016 cancer surgery and subsequent  treatments, which included radiation and physical therapy, she suffered multiple fractures of that same leg.  See R. at 833-34, 1258, 1263, 1330-39.

As explained below, the ALJ discussed some of the evidence pertaining to Reilly's hand impairments, but did not consider all of it.  Further, with respect to the cancerous lesion, the ALJ relied on medical evidence from Reilly's long period of misdiagnosis to improperly discredit her alleged functional limitations with respect to her knee and then failed to properly consider the functional limitations that remained following her cancer treatment.  See id. at 786-91, 985-88.  Because further remand is unlikely to reveal new or additional information relevant to the limited time period at issue, and because Reilly has already waited for six years for the determination of her DIB claim, I will award  benefits.  See Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984) (A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing.); see also 42 U.S.C. § 405(g) (sentence four).

PROCEDURAL HISTORY

After Reilly's claim for benefits was denied initially, an administrative hearing was held

in December 2015.  R. at 33-87, 94-100.  Reilly informed the ALJ that she was under evaluation

for a lesion on her right knee.  Id. at 53-54.  She was diagnosed with synovial sarcoma[5] of the

right knee soon after the hearing, underwent surgery, and began radiation therapy.  Id. at 717-34,

748-65, 768, 1068-1153, 1315, 1584, 1943.  On March 23, 2016, the ALJ nevertheless found that

Reilly could perform the full range of sedentary work and was not disabled under the Social

Security Act (Act).  Id. at 10-32.  After a successful appeal, her case was remanded to another

ALJ with instructions to properly analyze the functional impact of synovial sarcoma and the

alleged hand impairments at step two of the sequential analysis and in the RFC assessment, and

to properly consider the opinion of Dr. Mary Fabian, Reilly's primary care physician.  Id. at 856-

93.

Following a second hearing in October 2019,  Reilly's claim for benefits again was

denied on November 17, 2019.  Id. at 772-855.  The ALJ found that Reilly was capable of

performing sedentary, unskilled work with additional postural and environmental limitations,[6]

and that Reilly can perform her past work as an administrative clerk, or in the alternative, a

---

[5]     Synovial sarcoma is a rare type of cancer that tends to arise near large joints, particularly the knee.  See https://www.mayoclinic.org/diseases-conditions/synovial-sarcoma/cdc-20387747 (last visited October 27, 2020).

[6]     The ALJ found that through the DLI, Reilly had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that she can occasionally climb ramps and stairs, and can only occasionally balance, stoop, kneel, crouch, and crawl.  R. at 783.  He also found that Reilly can never climb ladders, ropes, or scaffolds, and that she can tolerate occasional exposure to work involving unprotected heights, moving mechanical parts, operation of a motor vehicle, humidity, wetness, extreme cold, extreme heat, and vibration.  Id.

significant number of jobs that exist in the national economy.  See id. at 783.  Reilly now seeks

review of the second decision.

## FACTUAL HISTORY

At the time of the second hearing, Reilly, a married mother of two children then ages nine

and 14, resided with her husband and children.  Id. at 817.  She was 44 years old.  See id. at 120.

Before the birth of her first child, Reilly performed administrative work for an insurance

company.  Id. at 38-41, 819, 821.  She subsequently returned to work part-time and was

employed for six years, until January 2014, as a caregiver.  Id.  By the time she stopped working,

Reilly had reduced her hours to one day per week due to pain and fatigue.  Id. at 131.

The 2,141-page record documents Reilly's numerous impairments.  In addition to the

cancerous lesion in her right leg, Reilly has been diagnosed with fibromyalgia, small fiber

neuropathy, and arthritis, for which she has been treated by several providers, including Dr.

Fabian, a primary care physician, Dr. Ellen Field, a rheumatologist, and Dr. Joan Sweeney, a

neurologist.  See, e.g., id. at 392-409, 429-42, 548-66, 578-83, 1556-1630, 2138-41.  Reilly has

consistently reported diffuse body pain, difficulty walking, twitching in her hands and feet, and

migraine headaches.  Id. at 410-25, 609-23, 618-30, 823.  She also has experienced foggy

thinking and memory trouble.  Id. at 410-25, 618-30, 1580-1631.  According to her testimony,

fatigue is a significant impairment to her ability to work and sometimes causes Reilly to miss

even medical appointments when she feels she cannot safely drive.  Id. at 825.  Reilly also

testified that her ability to perform household tasks is affected by fatigue.  She limits meal

preparation and uses paper plates to avoid dishes.  Id. at 823, 827, 835-38.  She consistently

reported problems with fatigue to her various treatment providers.  See, e.g., id. at 410, 431, 578-

83, 1165-75, 1556-79, 1931.  Reilly also asserts that she experiences debilitating headaches

several times each week.  Id. at 825.  The primary care, neurology, rheumatology, and orthopedic

records document those complaints from 2014 through her DLI.  See, e.g., id. at 411, 416, 623,

1165, 1168, 1171, 1175, 1178, 1181, 1184, 1187, 1190, 1582, 1912.  Medication prescribed to

treat headaches also caused drowsiness and renders Reilly unable to drive.[7]  Id. at 836.

Reilly was treated for knee pain years before the alleged onset date, including surgery in

2008.  See id. at 207-16, 507, 691, 717.  Her records establish that Reilly consulted with Dr.

Patrick Brogle, an orthopedic surgeon, in August 2014.  Id. at 507-08.  Reilly reported a

"sensitive spot" on her right knee that radiated pain when touched and difficulty standing and

bending her knee.  Id.  Dr. Brogle initially assessed neuritis and treated Reilly with a steroid

injection, then diagnosed arthritis and tendonitis and referred Reilly to physical therapy.  See id.

at 490-506.  From January 2015 through August 2015, Dr. Thomas DiBenedetto, an orthopedist,

treated Reilly with medication and injections for pain while she continued physical therapy.  Id.

at 531-48, 641.  In August 2015, Dr. DiBenedetto noted leg atrophy and "an exquisitely tender

area to light touch" above Reilly's right knee.  Id. at 531.

In November 2015, Dr. Robert C. Palumbo, an orthopedic specialist, ordered MRI studies

which revealed a right knee lesion that had clearly enlarged when compared to the results of an

earlier MRI.[8]  See id. at 694, 701-02, 716.  The lesion was biopsied, determined to be synovial

sarcoma, and removed in December 2015.  Id. at 717-34.  A second surgery was performed in

---

[7]     A November 2018 brain MRI showed findings that "may accompany migraine
headaches."  R. at 1247.  Reilly explained that light and loud noises make the headaches worse.
Id. at 836.  She obtains relief only when she lays down and closes her eyes.  Id.

[8]     As noted above, although a right knee lesion was noted on an MRI report in October
2014, see R. at 481-82, 492, 496, Reilly was not made aware of this finding until sometime in
late 2015 when she was informed that that the lesion had grown, see id. at 53-54.

February 2016.  Id. at 748-65, 768.  After in-home recovery,[9] she participated in outpatient

physical therapy and received radiation therapy.  Id. at 1068-1153, 1315, 1584, 1943.

Although the cancerous lesion was removed, Reilly continues to claim symptoms.  Pl. Br.

at 7.  For example, Dr. Sweeney's neurology records reflect that Reilly has continued to report

fatigue, pain, and weakness in her right leg, and to demonstrate reduced muscle strength.  See,

e.g., id. at 1601, 1604, 1610, 1613-14, 1617.  The records of Reilly's rheumatologist, Dr. Field,

and orthopedist, Dr. Palumbo, document similar complaints.  See, e.g., id. at 1165, 1168, 1171,

1175, 1565, 1568, 1571, 1574.  Because her surgery included the removal of a lymph node,

Reilly developed lymphedema[10] in her right leg, impairing her ability to kneel, ascend and

descend steps, sit, and stand for long periods, and requiring her to periodically elevate her leg.

See, e.g., id. at 824, 1547-56, 1559, 1565, 1568, 1571, 1574.  Reilly participated in occupational

therapy for treatment of this condition in November 2017.  Id. at 1547-56.  She also has utilized

compression stockings.  Id. at 824.  In addition, after receiving radiation therapy, Reilly was

diagnosed with osteoporosis and sustained two stress fractures in her right leg.  The first, in

December 2017, occurred in her right thigh, and the second, in June 2018, occurred in her right

knee area.  Id. at 1241, 1258, 1263.

With respect to her hand impairments, Reilly described pain, numbness, twitching, and

tingling.  See, e.g., id. at 42, 57, 844.  She reported difficulty with various tasks such as carrying

groceries, typing, writing, lifting, yardwork, and using a phone.  See, e.g., id. at 42, 58, 65, 172-

---

[9]     Reilly received in-home nursing care until the end of March 2016.  See R. at 1944-2114.
The nursing notes reflect that Reilly first used a walker, and eventually a cane, and that she was
unable to leave her home independently during this time.  Id.

[10]    Lymphedema is the presence of abnormally large amounts of fluid between the cells of
the limbs because lymph is not draining normally.  Dorland's at 593, 1084.

73, 177, 823, 829, 832-33.  She consistently reported that she drops things.  See, e.g., id. at 42, 172, 1600, 1912.  Reilly sought treatment from her primary care physician, rheumatologist, and neurologist for these issues from 2013 through 2019.  See, e.g., id. at 415, 423, 439, 431, 618, 1556, 1565, 1580-81, 1600, 1909, 2138-39.  Although her diagnoses changed, treating providers observed decreased grip strength.  Id. at 431, 612, 1906.  In January 2014, an EMG[11] study showed borderline carpal tunnel syndrome in her right hand and Dr. Sweeney's neurological progress notes reflect that as late as April 2018, Reilly was evaluated for worsening symptoms of carpal tunnel syndrome.  Id. at 420-21, 1592.  Subsequent EMG studies in June 2018 and July 2019 were normal and no longer evidenced carpal tunnel syndrome.  Id. at 420-21, 1620-30.  X-rays in October 2018, however, revealed osteoarthritis of both hands.  Id. at 1064-67.

Reilly testified that her daily activities are limited from the cumulative effect of her multiple conditions and that her husband helps with most household chores, including cleaning, grocery shopping, and taking care of their children.  See, e.g., id. at 823, 827-28, 845.  Reilly's son assists with the laundry.  Id. at 828-29.  She also said that she no longer attends church, rarely eats in restaurants, and socializes minimally.  Id. at 830-31.  She has limited her children's activities as well.  She suffered one of her leg fractures walking up a hill to pick up her younger son from Little League practice, and was forced to withdraw him from the league when her husband was unable to transport him.  Id. at 834.[12]

---

[11]     EMG, or electromyography, uses surface electrodes, needle electrodes, and other devices to record the activity of muscles at rest, during contractions and during electrical stimulation. Dorland's at 602.

[12]     In addition, Reilly contends that the various impairments have impacted her mental abilities.  She also has experienced ongoing gastric problems from IBS and testified that stress exacerbates this condition.  R. at 826.

Three medical source statements from Dr. Fabian note Reilly's limitations with respect to lifting, sitting, standing, walking, postural movements, and bilateral manual dexterity. See id. at 599-602 (opinion dated November 13, 2015), 985-88 (opinion dated December 5, 2018), 1919-22 (opinion dated September 18, 2019). The opinions also state that Reilly was advised to elevate her legs throughout the day, that headaches and fatigue would impact Reilly's work attendance, attention, or pace, and that Reilly would likely miss five or more days of work per month.[13] In addition, Dr. David Warner, a treating podiatrist, also completed a medical source statement which reflects that he had treated Reilly since October 2015 and noted various functional limitations. See id. at 1915-18. Dr. Warner opined that, due to her impairments, Reilly would only be comfortable sitting in a reclining chair for one hour before she would need

---

[13]     The November 2015 opinion reflects Reilly's diagnoses at that time, and limits Reilly's abilities to lift, sit, stand, and walk, due to fibromyalgia, arthritis of the knee, and carpal tunnel syndrome. R. at 599-600. Dr. Fabian also opined that Reilly was limited in bilateral dexterity, noting that Reilly had a tendency to drop things and difficulty holding a phone. Id. at 600. The opinion also reflects that Reilly was advised to elevate her legs twice per day, that fatigue and headaches due to fibromyalgia impact Reilly's ability to work, and that she would likely be absent more than five days of work each month. Id. at 600-02.

In December 2018, Dr. Fabian again limited Reilly in her ability to lift, sit, stand, and walk due to lymphedema, arthritis, and fibromyalgia. Id. at 985-86. Dr. Fabian again noted that Reilly has been advised to elevate her legs due to lymphedema, and imposed limitations on her ability to use her hands. Id. Dr. Fabian noted that Reilly is unable to use her fingers for typing, cutting, or writing due to fibromyalgia and carpal tunnel syndrome. Id. at 986. She also imposed postural limitations due to arthritis of the knee and lymphedema, and again noted limitations due to headaches and fatigue resulting from fibromyalgia. Id. at 987. Dr. Fabian opined that Reilly would likely be absent from work five or more days per month, and that the opinion pertained from 2014 to the date of the opinion. Id. at 989.

Dr. Fabian's third opinion, dated September 18, 2019, also limits Reilly in her ability to lift and use her hands, arms, and shoulders due to carpal tunnel syndrome and arthritis. Id. at 1919-20. Dr. Fabian opined that Reilly is limited in her ability to sit, stand, walk, and perform postural activities, and that she must elevate her legs every two hours, due to fibromyalgia and arthritis. Id. She again opined that fibromyalgia and lymphedema cause headaches and fatigue, and that Reilly would likely be absent more than five days each month. Id. at 1921-22. This opinion pertained to the period of 2015 to the date of the opinion. Id. at 1922.

to move about for 15 minutes.  Id. at 1916.  He also noted that Reilly would likely miss three to

five days of work each month due to her symptoms.  Id. at 1918.[14]

### DISCUSSION

A claimant is disabled if she is unable to engage in "any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months."  20 C.F.R. § 404.1505; see also Diaz v. Comm'r of Soc. Sec., 577 F.3d 500,

503 (3d Cir. 2009).  Such impairment "must be established by objective medical evidence from

an acceptable medical source," and cannot be based solely on a claimant's statement of

symptoms.  20 C.F.R. § 404.1521.  The ALJ must consider all evidence in the record and explain

his or her reasoning.  See id. §§ 404.1520(a)(3), 404.1527(c).  Evidence cannot be rejected "for

an incorrect or unsupported reason," Zirnsak v. Colvin, 777 F.3d 607, 612-13 (3d Cir. 2014), and

an ALJ must specifically address any relevant evidence he chooses to discount, Burnett v.

Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000).

I must accept all ALJ findings of fact that are supported by substantial evidence, meaning

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000); see also 42 U.S.C. § 405(g); Rutherford v.

Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) (substantial evidence is "more than a mere scintilla

but may be somewhat less than a preponderance of the evidence").  I "review the record as a

whole to determine whether substantial evidence supports a factual finding," Zirnsak, 777 F.3d at

---

[14]     In addition, Sarah Ferreira, CRNP, completed medical source statements dated November
12, 2015 and July 30, 2019 related to Reilly's treatment for GERD and IBS.  R. at 595-98, 1279-
82.  A state agency psychological consultant also reviewed the records available as of July 10,
2014 in connection with Reilly's DIB claim at the initial level.  Id. at 77-86.

610, but may not "re-weigh the evidence or impose [my] own factual determinations," <u>Chandler</u>

<u>v. Comm'r of Soc. Sec.</u>, 667 F.3d 356, 359 (3d Cir. 2011).  As explained below, I find that

substantial evidence does not support the Commissioner's decision.

      1.  <u>Non-severe Impairments and Sufficiency of RFC Analysis</u>

      Reilly argues that the ALJ erred in finding that her hand impairments, right leg

lymphedema, and IBS are not severe impairments at step two of the sequential analysis.  Pl. Br.

at 15-22.  At step two, the ALJ must determine whether the claimant has a severe impairment or

combination of impairments which significantly limits the claimant's physical or mental ability

to do basic work activities.  20 C.F.R. §§ 404.1520(c); 404.1522.[15]  Regardless of the severity

findings at step two, an ALJ must analyze what limitations the non-severe impairments cause in

the context of the RFC assessment.  <u>See</u> 20 C.F.R. § 404.1545(a)(2) ("We will consider all of

your medically determinable impairments of which we are aware, including your medically

determinable impairments that are not 'severe,' . . . , when we assess your residual functional

capacity.").  Thus, an error at step two may be harmless if the ALJ considers the effects of the

impairment in assessing a claimant's RFC.  <u>See, e.g.,</u> <u>Lee v. Astrue</u>, 2007 WL 1101281, at *3 n.5

(E.D. Pa. Apr. 12, 2007) (noting that the ALJ's determination at step two would not warrant

remand if the ALJ proceeded with the five step sequential evaluation process and properly

analyzed the claimant's limitations, considering both severe and non-severe limitations).

      a.  <u>Hand impairments</u>

      Reilly contends that the ALJ failed to properly consider the cumulative effect of carpal

tunnel syndrome, fibromyalgia, and osteoarthritis throughout the sequential analysis.  I agree.

---

[15]    Examples of basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling.  20 C.F.R. § 404.1522(b).

At step two, the ALJ described Reilly's hand impairments as "complaints of bilateral hand arthritis and carpal tunnel syndrome," and noted that Reilly complained of twitching, stiffness, weakness to her neurologist, rheumatologist, and primary care physician.  R. at 778. The ALJ mentioned a 2013 right hand x-ray that showed no fracture and October 2018 x-rays that showed arthritis in both hands.  Id.  Further, the ALJ stated that Reilly's grip strength "at most showed only 'mild' reduction in strength."  Id.  He also noted June 2018 and July 2019 EMG studies that were normal.  Id.  The ALJ concluded, "[f]or this reason, the undersigned does not find that the severe allegations are supported by the evidence."[16]  Id.

The burden placed on an applicant at step two is "not an exacting one."  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).  An applicant need only demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."  Id.  The severity test is a "de minimis screening device."  Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003).  "Any doubt as to whether this showing has been made is to be resolved in favor of the applicant."  McCrea, 370 F.3d at 360.  Moreover, the functional effects of even non-severe impairments must be considered in the RFC assessment.  Brown v. Astrue, 2010 WL 4455825, at *4 (E.D. Pa. Nov. 4, 2010) ("Functional limitations caused by all impairments, whether found to be severe or non-severe at step two, must be taken into consideration at steps three, four and five of the sequential evaluation.").

---

[16]     Although the ALJ focused his analysis on carpal tunnel syndrome as the cause of Reilly's hand impairments, see R. at 775, 784, the April 2018 R&R that identified the issues for reconsideration on remand instructed him to consider the functional limitations in her hands, and did not limit the review to evidence of that one diagnosis, see id. at 882.

The RFC deemed Reilly capable of performing a range of sedentary, unskilled work, but did not include any limitations in hand functioning.  See R. at 783.  In reaching this conclusion, the ALJ provided a detailed chronological summary of the extensive medical record, including some of the objective testing results and references to Reilly's consistent reports to her various treatment providers that she experienced difficulty with her hands.  See id. at 783-94.  The ALJ also discussed the medical opinion evidence, including Dr. Fabian's three opinions.  Id. at 791-92.

The ALJ failed to sufficiently address the functional limitations caused by Reilly's various hand impairments, as he was required to do even though he found the hand impairments to be non-severe.  See 20 C.F.R. § 404.1545(a)(2).  For example, when discussing Dr. Fabian's January 2015 and December 2018 opinions, the ALJ listed the various limitations imposed by Dr. Fabian, including limitations on the use of Reilly's hands and arms and manual dexterity, but offered no analysis of those restrictions.  R. at 791-92.  The ALJ failed to acknowledge the limitations on hand functioning that were included in Dr. Fabian's third, December 2019 opinion.  See id. at 792.  Instead, the ALJ discounted Dr. Fabian's opinions based on the standing and walking restrictions contained therein.[17]  Id.

The hand restrictions imposed by Dr. Fabian are probative to Reilly's claim because the VE testified that if the hypothetical individual were limited to occasional use of the hands, the

---

[17]     The ALJ attributed "little weight" to Dr. Fabian's opinions on the basis that the objective medical evidence, the examination records from specialists, and Reilly's activity level did not support "such standing and walking restrictions."  R. at 792.  The ALJ further reasoned that "Dr. Fabian's records do not support that the claimant consistently has antalgic gait and the claimant herself indicated that she can walk and only has issues with stairs."  Id.

identified unskilled jobs would not be available.[18]  See id. at 853.  Moreover, the ALJ found

Reilly capable of performing her past work as an administrative clerk, as performed by Reilly at

the sedentary exertion level.  Id. at 794, 848.  The Dictionary of Occupational Titles specifies

that reaching, handling, and fingering is performed "frequently" in this job, existing from one-

third to two-thirds of the time.  See Dictionary of Occupational Titles, 219.362-010

Administrative Clerk, 1991 WL 671953.

An ALJ "may not reject pertinent or probative evidence without explanation."  Johnson

v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008).  Although the ALJ was not obligated

to adopt each restriction noted in Dr. Fabian's opinions, he failed to evaluate the opinion

evidence and explain why he rejected countervailing evidence.  Accordingly, "the reviewing

court cannot tell if significant probative evidence was not credited or simply ignored."  Cotter v.

Harris, 642 F.2d 700, 705 (3d Cir. 1981).

Similarly, an ALJ may not "'pick and choose' among the evidence, selecting only that

which supports his ultimate conclusions."  Middlemas v. Astrue, 2009 WL 578406, at *9 (W.D.

Pa. Mar. 5, 2009) (citing Morales v. Apfel, 225 F.3d 310, 318 (3d Cir. 2000) (an ALJ may not

simply rely on "the pieces of the examination reports that supported [his] determination," while

excluding other evidence)).  For example, October 2018 x-rays showed arthritis of both hands.

See R. at 1064-66.  Reilly sought treatment from neurologist Dr. Sweeney for pain in both hands

and wrists soon after the x-rays were taken.  Id. at 1580-83.  Although the ALJ mentioned these

---

[18]     When questioning the VE at the second hearing whether the hypothetical individual could perform other work in the national economy, the ALJ asked the VE to limit his responses to unskilled jobs.  See R. at 848-49.  The VE identified the jobs of bench assembler, hand packager, and visual inspector, each a sedentary, unskilled job.  Id. at 849.  "Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions."  Determining Capability to Do Other Work -the Med.-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251, at *5 (1983) (SSR 83-10).

x-rays at step two, he failed to consider the functional impact of those objective medical findings

in the RFC analysis.  The x-rays support the hand restrictions identified by Dr. Fabian.  Dr.

Fabian's opinions also cited fibromyalgia as one of the causes of Reilly's functional hand

limitations, see id. at 599-600, 985-86, which the ALJ also omitted from his analysis, despite

recognizing its severity.  The treatment notes of rheumatologist Dr. Field further document the

fibromyalgia diagnosis and support Dr. Fabian's opinions and Reilly's claims of reported hand

symptoms, including pain, stiffness, and "dropping things."  Id. at 1556-79.  If the ALJ excluded

relevant evidence from the RFC analysis for some reason, he failed to provide such a reason and

erred in so doing.[19]

The ALJ was required to provide "substantial evidence" in support of his RFC.  42

U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion."  Biestek v. Berryhill, 139 S. Ct. 1148, 1154

(2019).  Although the ALJ addressed Reilly's provisional diagnosis of carpal tunnel syndrome,

he continued to ignore her complete medical history by failing to address medical evidence that

showed the functional limitations in Reilly's hands were either alternatively or additionally

attributable to osteoarthritis in her hands or fibromyalgia.  Accordingly, the error at step two is

not harmless.  See Lee, 2007 WL 1101281, at *3 n.5.

---

[19]     Further, the ALJ described the treatment records for Reilly's various impairments as
"generally unremarkable" and incorrectly stated that "[o]bjective studies are most often
negative."  R. at 784.  For example, at step two, when reasoning that Reilly's hand impairments
were not severe, the ALJ noted that Reilly's grip strength "at most showed only mild reduction
in strength."  Id. at 778.  However, a medical record dated August 9, 2019 noted "significantly
decreased grip strength and deconditioning" in her right arm.  See id. at 1906.  This medical
record postdates the DLI.  Nevertheless, the ALJ relied upon records that postdate the DLI in
support of his decision to deny benefits, such as the normal EMG studies dated July 2019, see id.
at 778.

b. Lymphedema

The ALJ also erred in his evaluation of Reilly's lymphedema, which developed after removal of her lymph node along with the cancerous tumor in her leg.  At step two, the ALJ stated that Reilly "testified that she wears a non-prescribed compression garment" to treat this condition and that she "underwent a few months of rehabilitation in November and December 2017."[20]  R. at 780.  He concluded that "[t]his non-severe condition has been considered when reducing the claimant to sedentary exertion."  Id.

In the RFC analysis, the ALJ found that the treatment records "support that there has been no recurrence of the cancer after surgery."  Id. at 791.  He reasoned that, although Reilly "had ongoing knee pain or issues related to a stress fracture," the limitation to sedentary work "address[ed] the residuals that persisted for longer than 12 months."  Id. at 791.  However, by definition, sedentary work[21] can require periods of standing or walking up to two hours in an eight-hour workday.  SSR 83-10, 1983 WL 31251, at *5.  Sitting should generally total approximately six hours of an eight-hour workday.  Id.  The RFC included no limitations to accommodate the functional limitations due to Reilly's ongoing lymphedema that were listed in Dr. Fabian's December 2018 and even September 2019 opinions.  See R. at 985-88, 1919-22.

For example, the December 2018 opinion states that lymphedema limits the amount of time Reilly can sit, and requires the opportunity to sit or stand at will.  Id. at 986.  Yet, the RFC

---

[20]  As Reilly pointed out in her brief, however, the November and December 2017 occupational therapy treatment notes reflect that compression garments were prescribed to address lymphedema of her right leg.  See R. at 1547-53.  Reilly testified that she does not wear "medical grade" compression garments because they are not covered by her insurance.  Id. at 824.

[21]  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools," and a "certain amount of walking and standing is often necessary in carrying out job duties."  20 C.F.R. § 404.1567.

does not include a sit-stand option.  Dr. Fabian also opined that, due to lymphedema, Reilly must

elevate her legs every few hours and can never perform postural activities.  Id.  Yet, the RFC

fails to feature any accommodation for Reilly to elevate her leg.  Dr. Fabian offered the same

limitations in the September 2019 medical source statement, and also listed fatigue as a symptom

Reilly experiences due to lymphedema; lymphedema was also listed as a symptom that would

cause Reilly to report late, leave early, or be absent from work.  Id. at 1921-22.  The RFC

analysis fails to address those restrictions.  By ignoring or failing to resolve "a conflict created

by countervailing evidence," see Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983), the ALJ

lacked substantial evidence to justify his RFC analysis.[22]

   2.   Awarding Benefits

   When reversing the Commissioner's decision under 42 U.S.C. § 405(g), I may remand to

the Commissioner for a further hearing or award benefits.  Brownawell v. Comm'r of Soc. Sec.,

554 F.3d 352, 357-58 (3d Cir. 2008).  Benefits should be awarded only when the administrative

record has been fully developed and substantial evidence on the record as a whole indicates that

the claimant is disabled and entitled to benefits.  Podedworny, 745 F.2d at 221-22.  The decision

to award benefits "is especially appropriate when the disability determination process has been

delayed due to factors beyond the claimant's control."  Brownawell, 554 F.3d at 358.

   Reilly has already waited six years for a determination of her DIB claim and an award of

benefits is appropriate.  Reilly has had two administrative hearings, sought review by the

---

[22]    Reilly also argues that: (1) IBS should have been found to be a severe impairment at step two, see Pl. Br. at 21-22; (2) the ALJ erred in weighing the opinion evidence, see id. at 22-28; (3) failed to properly address the evidence in the RFC analysis, in particular the evidence of fatigue and headaches, see id. at 28-30; and (4) the VE testimony does not support the step five determination because all credibly established impairments were not included in the hypothetical questions, see id. at 31.  Because each of these arguments relates to the ALJ's RFC analysis which I have already found to be inadequate, I decline to address them.

Appeals Council twice, and has filed two requests for review with the district court.  See Morales

v. Apfel, 225 F.3d 310, 320 (3d Cir. 2000) (considering the length of the delay since the

commencement of administrative proceedings).  Nothing in the record suggests that the delay has

been caused by her.  See id. (noting the delay was not caused by the claimant).  Reilly's DIB

insurance expired two years ago, and no additional evidence is necessary to evaluate her

functional limitations from 2014 through 2018.  See id. (noting that "the disability determination

has already taken ten years and the record is unlikely to change").  Reilly's extensive medical

record constitutes substantial evidence to support an award of benefits.  Id. at 320 (finding that

"the extensive medical record, wrongly rejected by the ALJ, is substantial evidence that Morales

suffers from a severe mental disability that renders him unable to engage in substantial gainful

activity").

       I therefore direct that this case be remanded forthwith to award benefits.  See Nazario v.

Comm'r Soc. Sec., 794 F. App'x 204, 209 (3d Cir. 2019) (remanding case for award of benefits

where record was unlikely to benefit from further development, the record contained substantial

evidence that the claimant was disabled, and the seven-year delay in deciding the case was not

caused by any error of the claimant); see also Diaz v. Berryhill, 388 F. Supp. 3d 382, 391 (M.D.

Pa. 2019) ("courts have found that administrative delays of five years or more in cases involving

one or two prior remands have constituted excessive delays triggering consideration of an award

of benefits in lieu of a remand") (citing cases).

       An appropriate Order accompanies this opinion.